IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOON YOUNG JEON and JLB EATERY GROUP, LLC, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 4:26-cv-07862 |
| IRVIN ENTERPRISES CORPORATION, | § | |
| Defendant. | § | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

The Complaint of Joon Young Jeon and JLB Eatery Group, LLC (hereinafter collectively "Plaintiffs"), appearing herein through the undersigned counsel, represents to the Court as follows:

**PARTIES**

1. Plaintiff, JLB Eatery Group, LLC ("JLB"), is a Texas limited liability company with an address at 28910 Parker Ridge Dr., Katy, Texas 77494.

2. Plaintiff, Joon Young Jeon ("Jeon"), is an individual residing in Harris County, Texas who owns U.S. Trademark Registration No. 5,971,427 for the JLB EATERY trademark.

3. Defendant, Irvin Enterprises Corporation (hereinafter "Irvin Enterprises" or "Defendant"), is, on information and belief, a Texas corporation having a registered address at 21122 Jade Bluff Lane, Katy, Texas 77450, and operating a restaurant located at 12002 Richmond Avenue, Suite 1000, Houston, Texas 77082. Irvin Enterprises may be served by summons directed to its registered agent, Vernon Lee Irvin, Jr., at 21122 Jade Bluff Lane, Katy, Texas 77450.

## NATURE OF THE ACTION; JURISDICTION OF THE COURT

4. This is an action for trademark infringement and unfair competition. This action arises under the Texas Business & Commerce Code, the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*. ("the Lanham Act"), and state common law, including the laws of the State of Texas.

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case and controversy.

6. This Court has personal jurisdiction over Defendant because Defendant operates a restaurant in this District using the JLB EATERY mark, and Defendant's infringing conduct is occurring in this District.

7. Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to these claims is occurring here and Defendant is subject to personal jurisdiction in this District.

## PLAINTIFFS, THEIR BUSINESS, AND THE JLB EATERY MARK

8. Plaintiff JLB Eatery Group, LLC ("JLB") operates a fast casual restaurant system featuring hamburgers, sandwiches on freshly baked bread, fried seafood, chicken wings, pork chops, wraps, quesadillas, and related food products and services under the JLB EATERY mark.

9. Plaintiff Jeon is the owner of the JLB EATERY trademark described herein. Jeon is the managing member of JLB and has granted JLB an exclusive license to use and sublicense the JLB EATERY mark in connection with restaurant services.

10. The JLB EATERY mark has been used continuously in commerce since at least May 2019 in connection with restaurant services. JLB, Jeon, and their predecessors-in-interest

have extensively promoted and used the JLB EATERY mark in connection with restaurant services throughout Texas and the United States.

11. Through extensive use, advertising, promotion, and commercial success, the JLB EATERY mark has become widely recognized by consumers as identifying restaurant services originating with Plaintiffs and distinguishing those services from the services of others.

12. JLB operates a restaurant system consisting of sixteen locations, including one company-owned location and fifteen licensed or franchised locations, operating under the JLB EATERY mark.

13. JLB and its licensed and franchised locations use the JLB EATERY mark in connection with restaurant services, including but not limited to use on menus, recipes, advertising, websites, social media accounts, online ordering platforms, delivery platforms, and business listings.

14. Jeon owns, and JLB uses pursuant to an exclusive license granted by Jeon, valuable goodwill in the JLB EATERY mark, and consumers associate that mark with the quality and source of Plaintiffs' restaurant services.

15. Plaintiffs have invested substantial time, labor, and expense in developing, operating, advertising, and expanding the JLB EATERY restaurant system and in protecting the JLB EATERY mark.

16. The JLB EATERY mark is a valuable business asset and identifies Plaintiffs' authorized restaurants and services.

17. Plaintiffs' continuous use and control of the JLB EATERY mark have strengthened its distinctiveness and goodwill among consumers.

18. Consumers recognize the JLB EATERY mark as a source identifier for Plaintiffs and their authorized locations.

## PLAINTIFF JEON'S FEDERAL TRADEMARK RIGHTS

19. Plaintiff Joon Young Jeon owns U.S. Trademark Registration No. 5,971,427 for the mark JLB EATERY (the "JLB EATERY Registration"). The registration was issued on January 28, 2020 on the Principal Register of the United States Patent and Trademark Office ("USPTO") for "*Restaurant and café services; Restaurant and catering services; Restaurant services; Take-out restaurant services*" in International Class 43.

20. The JLB EATERY Registration is valid, subsisting, and incontestable pursuant to Section 15 of the Lanham Act, and all required affidavits have been filed with the USPTO.

21. Jeon is JLB's founder, sole owner, and manager. Jeon has granted JLB an exclusive license to use and sublicense the JLB EATERY mark.

22. Plaintiffs have continuously used the JLB EATERY mark in commerce since at least May 9, 2019.

23. A true and correct copy of the above-referenced trademark registration is attached hereto as **Exhibit A**.

24. Plaintiffs have the right to enforce the JLB EATERY mark against unauthorized uses that are likely to cause confusion, including Defendant's continued use following termination of Defendant's license.

## BACKGROUND AND DEFENDANT'S UNLAWFUL ACTIVITIES

25. On October 17, 2023, JLB and Irvin Enterprises entered into a License Agreement (the "License Agreement") granting Irvin Enterprises a limited, non-transferable right to operate a restaurant under the JLB EATERY trademark at a single location, which was later agreed to be located at 12002 Richmond Avenue, Suite 1000, Houston, Texas 77082 (the "Licensed Location"). Under the License Agreement, Irvin Enterprises agreed to pay JLB a one-time brand fee of

$30,000.00 and a monthly license fee equal to five percent (5%) of gross sales. A true and correct copy of the License Agreement is attached as **Exhibit B**.

26. Section 2(c)(iv) of the License Agreement expressly requires Irvin Enterprises to comply with "Licensee's purchase from Licensor and Licensor's approved suppliers for any inventory, merchandise, and supplies for the purchase prices which may increase from time to time."

27. JLB designated SYSCO HOUSTON as its approved supplier for certain essential products, including Certified Angus Beef and French Fries.

28. Section 2(d) of the License Agreement expressly states that "if Licensee breaches or violates any provision of . . . [its] Continuing Obligations, Licensor and Licensee agree and stipulate that the actual damages for Licensor would be difficult to calculate and that the amount of $200.00 per day is a reasonable estimate of the damages Licensor will incur in the event of such breach or violation by Licensee."

29. JLB agreed to defer Irvin Enterprises' payment of the monthly license fee during portions of 2024 and 2025, on the condition that Irvin Enterprises allocate those funds toward local advertising to promote its business. To date, on information and belief, Irvin Enterprises has not provided documentation confirming that diverted royalties were ever used for advertising expenditures as required. JLB also paid Irvin Enterprises' first month's rent of approximately $3,000.00, gave Irvin Enterprises approximately $10,000.00 to help with construction issues before the restaurant opened, and waived the on-site management fee set forth in Section 3(c) of the License Agreement.

30. On or about May 1, 2025, Mr. Jeon temporarily authorized Irvin Enterprises to use an Excel brand beef product as an emergency substitute during a short-term supply shortage, which Mr. Jeon expected to be resolved within approximately two weeks. Mr. Jeon cautioned Irvin

Enterprises not to order too much of the substitute product given the temporary nature of the authorization.

31. On information and belief, Irvin Enterprises continued purchasing the unauthorized Excel brand beef product long after the supply issue was resolved and Mr. Jeon's temporary authorization had expired.

32. Thereafter, Mr. Jeon again agreed to accommodate Irvin Enterprises' requests by permitting Irvin Enterprises to pay a reduced royalty of three percent (3%), rather than five percent (5%), for the period from November 2025 through November 2026, so long as total sales exceeded $40,000 in a given month.

33. On or about December 16, 2025, JLB sent Irvin Enterprises a written notice identifying Irvin Enterprises' breach of the License Agreement's approved-supplier requirements. That notice stated that Irvin Enterprises had been purchasing essential products—including Certified Angus Beef and French Fries—from an unauthorized source known as "SYSCO TO GO" rather than the approved supplier, SYSCO HOUSTON. The notice further stated that the products obtained from SYSCO TO GO were of inferior quality and did not meet JLB's product standards. JLB provided Irvin Enterprises five (5) days to cure the breach.

34. On information and belief, Irvin Enterprises failed to cure the breaches identified in JLB's December 16, 2025 notice letter and continued purchasing products through SYSCO TO GO.

35. Under Section 2(a) of the License Agreement, Irvin Enterprises' right to use the JLB EATERY trademark is expressly conditioned on its compliance with all terms and obligations of the License Agreement.

36. Irvin Enterprises materially breached the License Agreement by purchasing products through unauthorized sources—specifically SYSCO TO GO—despite repeated written

notices from JLB that such purchases did not comply with Section 2(c)(iv) of the License Agreement. On information and belief, Irvin Enterprises has not placed an order through SYSCO HOUSTON for more than a year and has refused to comply with JLB's approved-supplier requirements.

37. Irvin Enterprises also materially breached the License Agreement by unilaterally adopting its own interpretation of the modified royalty arrangement and remitting royalty payments that were materially deficient. On information and belief, Irvin Enterprises contends that it only owes royalties on the portion of its monthly sales that exceeds $40,000, which is contrary to the parties' written communications and the terms of the temporary accommodation, as shown below:



However, JLB's accommodation was that for months where total sales exceeded $40,000, then Irvin Enterprises would pay 3% royalty, instead of 5% royalty, on the entirety of the total sales. Further, if total sales was less than $40,000 in a month, then Irvin Enterprises did not owe any royalties that month.

38. On information and belief, Irvin Enterprises has further breached the License Agreement by failing to provide required financial documentation, including required sales and tax reports, sufficient to permit JLB to verify Irvin Enterprises' royalty calculations.

39. On information and belief, in violation of the License Agreement, Irvin Enterprises obtained a domain name that completely incorporates Plaintiff's trademark (www.jlbeatery.com) and used the associated website to post communications to other JLB licensees encouraging them to utilize the same unauthorized sourcing arrangements through SYSCO TO GO and representing that such conduct complied with JLB's requirements. Such communications undermined JLB's supplier standards, quality-control requirements, and business relationships with its other licensees and with prospective licensees and other business partners or potential business partners. Specifically, on information and belief, Irvin Enterprises improperly registered the domain name **jlbeatery.com** on April 9, 2025, and used that domain to host a website containing content designed to destroy the goodwill associated with the JLB EATERY name and trademark and to damage JLB's business reputation, in violation of Sections 27 and 29 of the License Agreement. A screenshot of the website captured on May 29, 2026 is attached as **Exhibit C**.

40. On June 30, 2026, JLB sent Irvin Enterprises a Notice of Breach and Potential Termination identifying Irvin Enterprises' continuing breaches—including failure to pay monthly license fees, failure to provide tax and sales reports, unauthorized use of JLB trademarks on food products, breach of confidentiality obligations, and improper registration of the domain

jlbeatery.com—and providing Irvin Enterprises an opportunity to cure such breaches by July 17, 2026. A true and correct copy of that notice is attached as **Exhibit D**.

41. On information and belief, Irvin Enterprises failed to cure the breaches identified in JLB's June 30, 2026 notice and continued the challenged conduct.

42. On information and belief, Irvin Enterprises also used the **jlbeatery.com** domain as an unauthorized email domain and sent communications using JLB EATERY email addresses designed to disparage JLB, in further violation of Section 27 of the License Agreement.

43. On July 26, 2026, JLB filed a complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") with the Forum seeking transfer of the **jlbeatery.com** domain name from Irvin Enterprises.

44. On September 5, 2026, the Forum issued a decision in JLB's favor, ordering that the **jlbeatery.com** domain name be transferred to JLB. A true and correct copy of that decision is attached as **Exhibit E**.

45. The UDRP panel found that the **jlbeatery.com** domain name is identical or confusingly similar to the JLB EATERY mark, that Irvin Enterprises has no rights or legitimate interests in the domain name, and that Irvin Enterprises registered and used the domain name in bad faith.

46. In reaching its decision, the UDRP panel noted that Irvin Enterprises "willfully chose to not comply with the License Agreement," that Irvin Enterprises "continued to hold itself out as a licensee under the JLB EATERY mark after the agreement expired," and that Irvin Enterprises "registered [the] domain to disrupt the business of its licensor."

47. As a result of Irvin Enterprises' continuing defaults, on August 17, 2026, JLB sent Irvin Enterprises a Notice of Breach and Termination, formally terminating the License Agreement and directing Irvin Enterprises, pursuant to Sections 16 and 18 of the License Agreement, to cease

using the JLB EATERY name, trademark, menu, recipes, décor, and trade dress by September 14, 2026. A true and correct copy of that notice is attached as **Exhibit F**. In the letter, JLB did not demand that Irvin Enterprises make any other changes to its future business operations other than to cease all use of the JLB EATERY name and trademark, menu, recipes, and interior decor and trade dress.

48. On August 28, 2026, JLB's counsel sent further correspondence directing Irvin Enterprises to cease using JLB EATERY on online accounts, social-media accounts, delivery platforms, and business listings.

49. On September 10, 2026, counsel for Irvin Enterprises sent a cease-and-desist letter to JLB's counsel disputing JLB's termination of the License Agreement and demanding that JLB refrain from enforcing the termination, interfering with Irvin Enterprises' operations, or taking steps to shut down Irvin Enterprises' restaurant. Plaintiffs reject those demands. A true and correct copy of that letter is attached as **Exhibit G**.

50. Despite these notices and the September 14, 2026 deadline, on information and belief, Irvin Enterprises has continued operating its restaurant at 12002 Richmond Avenue, Suite 1000, Houston, Texas 77082 under the JLB EATERY name and mark without authorization.

51. On information and belief, Irvin Enterprises continues to use the JLB EATERY menu, recipes, trade dress, décor, and other proprietary materials in connection with that restaurant without Plaintiffs' authorization.

52. On information and belief, Irvin Enterprises is still using the JLB EATERY mark in commerce in connection with restaurant and take-out services that are identical to the services covered by the JLB EATERY Registration.

53. Defendant's authority to use the JLB EATERY mark derived solely from the License Agreement. Following termination of the License Agreement, Defendant no longer possessed any right, license, or authorization to use the JLB EATERY mark.

54. Irvin Enterprises' continued, unauthorized use is likely to cause confusion, mistake, and deception as to the origin, sponsorship, approval, affiliation, or association of its restaurant and services, including by causing consumers to believe that Defendant's restaurant remains authorized by, affiliated with, or operated in association with Plaintiffs.

55. Because Plaintiffs no longer control Irvin Enterprises' post-termination operations, on information and belief, Irvin Enterprises' continued use of the JLB EATERY mark is damaging Plaintiffs' goodwill and reputation and is exposing the public to services that Plaintiffs have not authorized and cannot ensure meet Plaintiffs' quality standards.

56. Irvin Enterprises has full knowledge of Plaintiffs' rights, the License Agreement's limitations, the termination, and the September 14, 2026 deadline, yet, on information and belief, it continues to use the JLB EATERY mark. Irvin Enterprises' infringement is therefore willful.

57. Plaintiffs are suffering and will continue to suffer lost goodwill, damage to reputation, loss of control over the quality and nature of services offered under the JLB EATERY mark, consumer confusion, and other irreparable harm for which there is no adequate remedy at law unless Defendant is enjoined.

58. On information and belief, Irvin Enterprises is profiting from the goodwill associated with the JLB EATERY mark and from sales generated through its unauthorized use of the JLB EATERY mark, while Plaintiffs are entitled to recover all trademark-related relief available under the Lanham Act and applicable law, including injunctive relief, Defendant's profits, Plaintiffs' actual damages, enhanced damages where permitted, attorneys' fees, costs, and such other relief as the Court deems proper.

59. Defendant Irvin Enterprises' actions have caused Jeon, Jeon's family, and JLB significant business disruptions and emotional distress.

**COUNT I**

**TRADEMARK INFRINGEMENT**
**UNDER § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114**

60. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as though fully set forth herein.

61. Plaintiff Jeon owns U.S. Trademark Registration No. 5,971,427 for the JLB EATERY mark (the "JLB EATERY Registration"), which is valid, subsisting, and registered on the Principal Register. Plaintiff JLB, as Jeon's exclusive licensee, has the right to join Jeon in enforcing the JLB EATERY Registration.

62. The JLB EATERY Registration covers restaurant and café services, restaurant and catering services, restaurant services, and take-out restaurant services in International Class 43.

63. Plaintiffs' rights in the registered JLB EATERY mark and the JLB EATERY Registration predate Irvin Enterprises' continued unauthorized use.

64. Irvin Enterprises is using the identical JLB EATERY mark in commerce in connection with restaurant services at the Houston location.

65. Those restaurant services are identical to the services covered by the JLB EATERY Registration.

66. Irvin Enterprises' use is unauthorized because the License Agreement terminated and the September 14, 2026 deadline to cease using the JLB EATERY mark has passed.

67. Irvin Enterprises' unauthorized use of the JLB EATERY mark is likely to cause confusion, deception, and mistake by creating the false impression that its restaurant is associated, affiliated, or connected with Plaintiffs, or has Plaintiffs' sponsorship, endorsement, or approval.

68. Consumers encountering Irvin Enterprises' restaurant, menus, online listings, delivery platform accounts, and advertising are likely to believe that those services originate with, remain affiliated with, or continue to be authorized by Plaintiffs.

69. Irvin Enterprises does not possess, and after September 14, 2026 has not possessed, the right or authority to use the JLB EATERY mark.

70. As a result of Irvin Enterprises' infringement, Plaintiffs are suffering loss of goodwill, damage to reputation, loss of control over the quality of services offered under the JLB EATERY mark, consumer confusion, and other actual damages, while Irvin Enterprises is deriving profits from its infringing use.

71. Irvin Enterprises' infringement is intentional and willful because Defendant has full knowledge of Plaintiffs' rights and has continued using the JLB EATERY mark after receiving express notice of termination and the deadline to cease use.

72. Unless enjoined, Irvin Enterprises will continue causing confusion and further injury to Plaintiffs' goodwill, reputation, and ability to control the quality of services offered under the JLB EATERY mark, for which Plaintiffs have no adequate remedy at law.

73. Plaintiffs are entitled to injunctive relief and all other relief available under the Lanham Act, including Defendant's profits, Plaintiffs' actual damages, enhanced damages where permitted, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II

## UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

74. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as if fully set forth herein.

75. Irvin Enterprises' unauthorized use of the JLB EATERY mark creates a false designation of origin and a false impression that Defendant's restaurant is affiliated with, sponsored by, approved by, or otherwise connected with Plaintiffs.

76. Irvin Enterprises is holding out its restaurant and services as authorized JLB EATERY services even though Plaintiffs terminated Defendant's License Agreement and have not authorized Defendant's continued use of the JLB EATERY mark.

77. The JLB EATERY mark is distinctive and has acquired substantial goodwill through continuous use, authorized locations, franchised locations, and extensive promotion.

78. Irvin Enterprises' conduct is likely to cause confusion, mistake, and deception among consumers and members of the trade as to the origin, sponsorship, approval, affiliation, or association of Defendant's restaurant and services and is therefore unlawful under 15 U.S.C. § 1125(a).

79. On information and belief, Irvin Enterprises' infringing activities have been intentional and willful. Defendant's bad faith is evidenced by its continued use of the JLB EATERY mark after receiving notice of termination of the License Agreement and multiple demands to cease use.

80. Irvin Enterprises' conduct has caused, and if not enjoined, will continue to cause, irreparable damage to Plaintiffs for which Plaintiffs have no adequate remedy at law.

81. As a result of Irvin Enterprises' acts, Plaintiffs have suffered and will continue to suffer actual damages, including lost goodwill, damage to reputation, and consumer confusion, while Defendant has obtained profits from its unauthorized use of the JLB EATERY mark.

82. Plaintiffs are entitled to injunctive relief, an accounting of Defendant's profits, actual damages, enhanced damages where permitted, costs, and reasonable attorneys' fees and all other relief available under the Lanham Act.

**COUNT III**

**<u>COMMON LAW TRADEMARK INFRINGEMENT & UNFAIR COMPETITION UNDER TEXAS LAW</u>**

83. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as though fully set forth herein.

84. Irvin Enterprises' infringing activities set forth above constitute common-law trademark infringement and unfair competition under Texas law.

85. Since at least 2019, Plaintiffs have continuously used the JLB EATERY mark in connection with restaurant services, licensed restaurant locations, franchised restaurant locations, and related goods and services.

86. Both Plaintiffs and Defendant are engaged in trade and commerce in the State of Texas.

87. Irvin Enterprises' use of the JLB EATERY mark in connection with its restaurant services has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendant's restaurant and services are affiliated with, endorsed by, approved by, sponsored by, or otherwise connected with Plaintiffs.

88. Irvin Enterprises' infringing activities are likely to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the source, origin, sponsorship, approval, affiliation, association, and quality of Defendant's restaurant services.

89. On information and belief, Irvin Enterprises' infringing activities have been intentional and willful. Defendant's bad faith is evidenced by its continued use of the JLB EATERY mark after receiving notice of termination of the License Agreement and multiple demands to cease use.

90. Irvin Enterprises' conduct has caused, and, if not enjoined, will continue to cause, irreparable damage to Plaintiffs for which Plaintiffs have no adequate remedy at law.

91. As a result of Defendant's acts, Plaintiffs have suffered and will continue to suffer lost goodwill, reputational harm, consumer confusion, and other actual damages. At a minimum, however, Plaintiffs are entitled to injunctive relief, Defendant's profits, actual damages, costs, and all other relief available under Texas law.

92. Defendant's conduct as described herein has been willful, wanton, reckless, and in violation of Plaintiffs' rights.

**COUNT IV**

**ANTICYBERSQUATTING UNDER § 43(d) OF THE LANHAM ACT, 15 U.S.C. § 1125(d)**

93. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as though fully set forth herein.

94. Plaintiffs, as exclusive licensees of the JLB EATERY mark from trademark owner Joon Young Jeon, have rights in the JLB EATERY mark sufficient to bring a claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

95. Irvin Enterprises, through its principal JR Irvin, registered the domain name <jlbeatery.com> on or about April 9, 2025.

96. The domain name <jlbeatery.com> is identical or confusingly similar to the JLB EATERY mark in which Plaintiffs have rights, as it incorporates Plaintiffs' federally registered trademark in its entirety and merely adds the generic top-level domain ".com."

97. Irvin Enterprises registered and used the domain name <jlbeatery.com> with a bad faith intent to profit from Plaintiffs' JLB EATERY mark.

98. Irvin Enterprises' bad faith intent to profit is evidenced by the following factors, among others:

a. Irvin Enterprises had actual knowledge of Plaintiffs' rights in the JLB EATERY mark at the time of registration, having entered into the License Agreement acknowledging Plaintiffs' ownership of the mark;

b. Irvin Enterprises registered the domain name using a privacy registration service, demonstrating an intent to conceal its identity as the registrant;

c. Irvin Enterprises used the domain name to operate a website containing false, misleading, and defamatory statements about Plaintiffs and Plaintiffs' founder, including accusations of fraud and financial impropriety;

d. Irvin Enterprises used the domain name to create email addresses incorporating Plaintiffs' trademark, including "DoNotGetSwindled@JLBEatery.com," to disparage Plaintiffs; and

e. Irvin Enterprises intended to tarnish and disparage Plaintiffs' trademark and to divert consumers who would naturally type "jlbeatery.com" when seeking information about Plaintiffs' restaurant services.

99. Irvin Enterprises' registration and use of the domain name <jlbeatery.com> was in direct violation of the License Agreement, which expressly provides that Irvin Enterprises "shall not . . . use or publish any advertisement . . . or other material bearing [Plaintiffs'] name or trademarks in any form or manner" without Plaintiffs' prior written consent.

100. On September 5, 2026, an administrative panel convened under the Uniform Domain-Name Dispute-Resolution Policy (UDRP) ordered the domain name <jlbeatery.com> transferred to Plaintiffs, finding that the domain name was registered and used in bad faith.

101. As a direct and proximate result of Irvin Enterprises' cybersquatting, Plaintiffs have suffered and will continue to suffer damages, including harm to Plaintiffs' goodwill and reputation, consumer confusion, and the diversion of potential customers and licensees.

102. Plaintiffs are entitled to injunctive relief, actual damages or statutory damages of up to $100,000 per domain name as provided under 15 U.S.C. § 1117(d), forfeiture or cancellation of the domain name, transfer of the domain name, costs, reasonable attorneys' fees, and all other relief available under the Lanham Act.

**COUNT V**

**BREACH OF CONTRACT**

103. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as though fully set forth herein.

104. On October 17, 2023, JLB entered into the License Agreement with Irvin Enterprises, pursuant to which Irvin Enterprises was authorized to operate a single JLB Eatery restaurant location in Houston, Texas.

105. The License Agreement constitutes a valid and enforceable contract between JLB and Irvin Enterprises.

106. JLB performed all of its material obligations under the License Agreement.

107. Irvin Enterprises breached the License Agreement in multiple material respects, including but not limited to:

a. Consistently failing to pay the Monthly License Fee as required by Section 1.h.(i) of the License Agreement;

b. Failing to deliver copies of tax returns and sales reports as required by Section 1.l.(i) and (ii) of the License Agreement;

c. Purchasing inventory, merchandise, and supplies from unauthorized sources, including Sysco To-Go, rather than from JLB or JLB's approved suppliers as required by Section 2(c)(iv) of the License Agreement;

d. Affixing JLB's name and trademark on food products that were not authorized or approved by JLB in violation of Section 27.a of the License Agreement;

e. Failing to maintain confidentiality regarding JLB's confidential business information as required by Section 29 of the License Agreement;

f. Registering and maintaining the domain name jlbeatery.com, which incorporates JLB's federally registered trademark, without JLB's authorization or consent, and in direct violation of Sections 2.a and 27 of the License Agreement;

g. Using the domain name jlbeatery.com to post false, misleading, and defamatory statements designed to destroy the goodwill associated with the JLB EATERY name and trademark and to damage JLB's business reputation, in violation of Section 27.a of the License Agreement and Irvin Enterprises' implied duty of good faith; and

h. Using the JLB EATERY mark as part of an email domain (jlbeatery.com) designed to disparage JLB, constituting a clear violation of Section 27 of the License Agreement.

i. JLB provided Irvin Enterprises with notice of its breaches and opportunity to cure, including through letters dated December 16, 2025, June 30, 2026, and August 17, 2026. Irvin Enterprises failed to cure its breaches within the time periods provided in the License Agreement.

108. On August 17, 2026, JLB notified Irvin Enterprises that the License Agreement was terminated and that all use of the JLB EATERY Mark must cease by September 14, 2026.

109. As a direct and proximate result of Irvin Enterprises' breaches, JLB has suffered and will continue to suffer damages, including but not limited to unpaid Monthly License Fees, unpaid royalties, damage to JLB's goodwill and reputation, and lost business opportunities.

110. Pursuant to Section 16(b) of the License Agreement, JLB is entitled to liquidated damages in the amount of $200.00 per day for Irvin Enterprises' default in the performance of its obligations under the License Agreement.

111. Pursuant to Section 16(a) of the License Agreement, JLB is entitled to injunctive relief enjoining Irvin Enterprises and its principals from operating a business under the JLB EATERY name, using the JLB EATERY brand name and trademark, cooking or selling any items listed in Schedule A to the License Agreement, using the storefront sign or logo of JLB EATERY, and using the JLB EATERY menu.

112. JLB is also entitled to recover all losses, costs, expenses, damages, and consequential damages incurred as a result of Irvin Enterprises' breach of the License Agreement, including reasonable attorneys' fees and costs as provided in Section 16(c) of the License Agreement.

## COUNT VI

## TORTIOUS INTERFERENCE WITH ONGOING AND PROSPECTIVE BUSINESS RELATIONS

113. Plaintiffs reallege and incorporate the allegations set forth in the paragraphs above as though fully set forth herein.

114. Plaintiffs have existing and ongoing business relationships with the operators of JLB EATERY's other authorized locations, including fifteen licensed or franchised locations, and with the customers, approved suppliers, vendors, delivery platforms, online-ordering services, business-listing services, and social-media platforms through which those locations operate and reach consumers. Authorized locations continuously sell JLB EATERY food, purchase inventory

and supplies, maintain online listings and accounts, accept customer orders, and use delivery services in connection with the JLB EATERY mark. Plaintiffs also have reasonably probable prospective business relationships with identifiable prospective licensees or franchisees and business partners considering or supporting additional JLB EATERY locations, as well as future customers, vendors, delivery platforms, business-listing services, and social-media platforms that would serve authorized locations.

115. Irvin Enterprises knew of these relationships and expectancies. Irvin Enterprises operated under the License Agreement, received permission to operate a JLB EATERY location, and knew that JLB required approved suppliers, uniform menus and recipes, quality control, and authorized use of the JLB EATERY mark. Irvin Enterprises also knew that JLB operated other licensed and franchised locations because it used JLB's system and deliberately posted communications directed to other JLB licensees. Its registration of **jlbeatery.com**, creation of email addresses using that domain, and use of the website to communicate about JLB's system further demonstrate actual knowledge of JLB's existing relationships and prospective business opportunities.

116. Irvin Enterprises intentionally interfered with those relationships and expectancies. On information and belief, it used the website hosted at **jlbeatery.com** and associated email addresses to contact or influence other JLB licensees, encouraged them to purchase from SYSCO TO GO rather than SYSCO HOUSTON, and represented that the unauthorized sourcing complied with JLB's requirements, despite JLB's written notice that SYSCO TO GO products did not meet JLB's standards. Irvin Enterprises also used **jlbeatery.com** and email addresses including "DoNotGetSwindled@JLBEatery.com" to publish or transmit statements accusing Plaintiffs of fraud and financial impropriety and otherwise disparaging JLB. Defendant's continued operation under the JLB EATERY name and continued use of the same mark and domain after termination

and repeated notices further targeted JLB's customer-facing channels and diverted consumer traffic and revenue away from authorized locations. On information and belief, these activities caused one or more potential licensees to forego a licensee relationship with JLB.

117. Irvin Enterprises acted with a conscious desire to disrupt JLB's relationships and prospective relationships, or with knowledge that interference was certain or substantially likely to occur. Its conduct was directed at JLB's licensees, customers, potential licensees, and business channels rather than being an incidental consequence of operating its own restaurant. The UDRP findings described above, together with Irvin Enterprises' targeted supplier communications and use of a trademark-based domain and email accounts, support the inference that Irvin Enterprises registered and used **jlbeatery.com** to disrupt JLB's business and to obtain the benefit of JLB's goodwill and customer traffic.

118. The conduct described above was independently tortious or unlawful apart from the interference itself. It included unauthorized use of the federally registered JLB EATERY mark and false designation of the source or affiliation of restaurant services; publication of false and disparaging statements about Plaintiffs; bad-faith registration and use of a domain name identical or confusingly similar to the JLB EATERY mark; use of JLB's trademark in email addresses to mislead recipients and disparage Plaintiffs; and communications falsely representing that unauthorized supplier arrangements complied with JLB's requirements. Those acts are actionable under recognized tort duties and applicable trademark and other law without regard to this claim, and Irvin Enterprises used them as the means of interfering with Plaintiffs' existing and prospective relationships.

119. Irvin Enterprises' conduct was not justified or privileged. After termination, Irvin Enterprises had no right to use the JLB EATERY mark or domain, to represent that it remained an authorized JLB licensee, to speak for JLB, or to direct other licensees to disregard JLB's approved-

supplier and quality-control requirements. Irvin Enterprises continued that conduct after receiving JLB's written notices of breach and termination and demands to cease using the JLB EATERY name and mark. Its conduct was undertaken in bad faith to obtain the benefit of Plaintiffs' goodwill and to disrupt Plaintiffs' business relationships, not as a good-faith exercise of a legal right.

120. As a direct and proximate result of Irvin Enterprises' interference, Plaintiffs' existing relationships have been impaired and placed at risk, and prospective relationships have been disrupted or prevented. Irvin Enterprises' supplier communications threatened JLB's ability to maintain uniform supplier and quality-control standards across its licensed locations; its unauthorized mark, website, email, and online activity created confusion for customers and for delivery, listing, and social-media platforms about which restaurant operations were authorized; and its false and disparaging statements damaged Plaintiffs' goodwill and reputation. Irvin Enterprises' unauthorized use also diverted web traffic, customers, sales, profits, license fees, royalties, and other revenue that otherwise would have flowed to Plaintiffs or authorized locations, and caused lost opportunities to add, renew, or expand licensees and business partners

121. Plaintiffs have therefore suffered actual damages and loss, including lost goodwill, reputational harm, quality-control harm, customer confusion, impairment of licensee and supplier relationships, lost or diminished license fees and royalties, lost business opportunities, and profits or revenue diverted through Irvin Enterprises' unauthorized use of the JLB EATERY name, mark, domain, menu, recipes, and trade dress. Plaintiffs' damages are recoverable in an amount to be proved at trial, together with all other relief available under Texas law.

## DEMAND FOR JURY TRIAL

122. Plaintiffs hereby demand a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for:

(a) Judgment that Defendant, its agents, servants, employees, attorneys, successors, assigns, related companies, and those acting in concert with any of them have infringed the JLB EATERY mark and engaged in unfair competition under the Lanham Act and Texas law, violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and breached the License Agreement, and that such conduct was willful;

(b) A permanent injunction prohibiting Defendant, its agents, servants, employees, attorneys, successors, assigns, and all those acting in concert with any of them from further use of the JLB EATERY mark and name and from further use of the JLB EATERY menu, recipes, trade dress, and other proprietary materials associated with the JLB EATERY restaurant system;

(c) An Order directing Defendant to remove and discontinue all use of the JLB EATERY mark and name and requiring the destruction, cancellation, deletion, or surrender of all materials bearing the JLB EATERY mark within Defendant's possession, custody, or control, including signage, menus, advertisements, websites, social-media accounts, online ordering platforms, delivery-platform accounts, business listings, and other materials appearing on the Internet, pursuant to at least 15 U.S.C. § 1118;

(d) An award of Defendant's profits, Plaintiffs' actual damages, statutory damages up to $100,000 per domain name under 15 U.S.C. § 1117(d), enhanced damages where permitted by law, costs, prejudgment and post-judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114, 1116, 1117, and 1125, and all other applicable provisions of Texas law;

(e) An award of damages for breach of the License Agreement, including liquidated damages of $200.00 per day pursuant to Section 16(b) of the License Agreement, unpaid Monthly License Fees and royalties, consequential damages, and all costs, losses, and expenses including attorneys' fees as provided under Section 16(c) of the License Agreement;

(f) Such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Dated: September 17, 2026

Respectfully Submitted,

*/s/ John C. Cain*
John C. Cain
Attorney in Charge
State Bar No. 00783778
Southern District Bar No. 15620
Email: JCain@MunckWilson.com

Steven Spears
State Bar No. 18898150
Southern District Bar No. 15094
Email: sspears@munckwilson.com

Munck Wilson Mandala LLP
1330 Post Oak Blvd, Suite 2850
Houston, TX 77056
(832) 615-2744 Telephone
(832) 615-2776 Facsimile

Tracy Carson
State Bar No. 24101600
Southern District Bar No. 2042355
Email: TCarson@munckwilson.com

Munck Wilson Mandala LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
(972) 628-3642 Telephone
(972) 628-3616 Facsimile

ATTORNEYS FOR PLAINTIFFS
JOON YOUNG JEON and JLB EATERY GROUP, LLC